UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/21/2019__

-----------------------------------------------------------X

A.D., individually and on behalf of E.D.,     :

    :

           Plaintiff,     :

    :        18-CV-3347 (VEC)

      -against-     :

    :        OPINION AND ORDER

    :

NEW YORK CITY DEPARTMENT OF     :

EDUCATION,     :

    :

           Defendant.     :

-----------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

On behalf of herself and her minor daughter E.D., Plaintiff A.D. filed this lawsuit against

Defendant New York City Department of Education, claiming to have prevailed against

Defendant in an uncontested administrative hearing under the Individuals with Disabilities

Education Act, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"), and seeking $49,918.22 in attorneys' fees

and costs under that statute's fee-shifting provision, *see* 20 U.S.C. § 1415(i)(3); *see also* Dkt. 1

(Compl.); Dkt. 42 (Reply in Supp. of Fee Mot.) at 11 (stating final demand). Plaintiff moved for

summary judgment on her fee request. *See* Dkts. 21-29. Plaintiff's motion is GRANTED IN

PART and DENIED IN PART.

## BACKGROUND

The factual and procedural history of this case is undisputed. In September 2016,

Plaintiff A.D. filed a due-process complaint ("DPC") under, among other federal and state

statutes, the IDEA, asserting that Defendant had denied her daughter E.D. a free and appropriate

public education ("FAPE") during the 2014-2015, 2015-2016, and 2016-2017 school years. *See*

Dkt. 23 ex. B (DPC) at 1-7.  The DPC demanded funding for five independent educational evaluations; funding for compensatory one-on-one tutoring services at the Huntington Learning Center ("Huntington"); compensatory vocational training; compensatory speech-and-language services; additional years of schooling; and other remedies.  *Id.* at 7-8.

An independent hearing officer ("IHO") held a due-process hearing over five sessions, during which Plaintiff was represented solely by Gina DeCrescenzo, Esq., and Defendant was represented by a non-legal professional.  *See generally* Dkt. 23 ex. D (hr'g tr.) at 12-205.  At the first session on November 23, 2016, which lasted sixteen minutes, Defendant  (1) conceded each of the DPC's allegations; (2) conceded that it had denied E.D. a FAPE; and (3) agreed to pay for 800 hours of home-based Special Education Teacher Support Services at Huntington, thereby resolving Plaintiff's demand for compensatory one-to-one tutoring.  *See id.* at 13-28; *see also* Dkt. 23 ex. M (Nov. 23, 2016 partial resolution agreement).  No witnesses testified, and no exhibits were introduced.  *See* Dkt. 23 ex. D (hr'g tr.) at 13-28.  On January 3, 2017, the IHO issued an interim order directing Defendant to fund an independent neuropsychological examination, noting that Defendant did not oppose that request.  *See* Dkt. 23 ex. N at 4.  At a second, telephonic session on January 25, 2017, which lasted four minutes, Ms. DeCrescenzo notified the IHO that no report had yet been issued by the neuropsychologist; the IHO adjourned the hearing to March 7, 2017.  *See* Dkt. 23 ex. D (hr'g tr.) at 31-34.  No DOE representative participated.  *See id.*

At a third session on March 7, 2017, which lasted forty-nine minutes, the IHO requested that Ms. DeCrescenzo make an opening statement or call witnesses in support of Plaintiff's DPC.  *See* Dkt. 23 ex. D (hr'g tr.) at 41 ("[IHO]: Do you have a witness or an opening statement?").  Despite having been informed by the IHO over five months prior that the IHO expected the

parties to deliver opening statements, *see id.* at 6-7 ("I want opening argument from both parties at the beginning of the case."), Ms. DeCrescenzo informed the IHO that she did not have any statement or witnesses prepared and requested an adjournment. *Id.* at 42-45 ("MS. DECRESCENZO: So based on the fact that we don't have any available witnesses today, I'd ask for just a brief adjournment so that I can schedule one of those individuals for the next time."). The IHO refused, stating: "when you have a hearing, you get your evidence ready, especially if you don't ask for an adjournment until the night before the hearing." *Id.* at 44. Over Ms. DeCrescenzo's protest that she was not prepared to examine Plaintiff herself—who was in attendance and whose testimony, Ms. DeCrescenzo agreed, was important to the litigation—the IHO ordered Ms. DeCrescenzo to put Plaintiff on the stand. *Id.* at 50-65. Plaintiff's testimony consisted primarily of examination by Ms. DeCrescenzo and the IHO; the DOE's representative asked Plaintiff only one question. *Id.* at 63.

At a fourth session on March 23, 2017, which lasted seventy-seven minutes, the parties and IHO discussed various potential resolutions of the DPC before turning to the telephonic testimony of Daniel Nemeth, an employee of New York Therapy Placement Services, regarding the post-secondary transitional and life-skills services that New York Therapy could provide E.D. and the hourly rates for such services. *See* Dkt. 23 ex. D (hr'g tr.) at 69-122. Both sides and the IHO examined Nemeth. *Id.* at 105-22. Plaintiff's last witness, Dr. Eugene Newman, the neuropsychologist who had evaluated E.D., was not present to authenticate his evaluation report and opine on E.D.'s condition. *See id.* at 122.

At the fifth and final session on April 27, 2017, which lasted seventy-five minutes, the parties and IHO heard the telephonic testimony of Dr. Newman, who opined, among other things, that E.D. had been misdiagnosed as intellectually disabled. *See* Dkt. 23 ex. D (hr'g tr.) at

135-201.  Although he confirmed that E.D. had a borderline IQ score, Dr. Newman found that her primary impairment was a speech-language impairment.  *Id.* at 147-85.  With no objection from Defendant, the IHO admitted six exhibits into evidence (the only exhibits introduced during the entire hearing), consisting of four of E.D.'s individualized education plans, Plaintiff's DPC, and Dr. Newman's report.  *See id.* at 130, 142.  Defendant rested without putting on evidence.  *See id.* at 128.

At the IHO's request, *see* Dkt. 23 ex. D (hr'g tr.) at 202-05, Plaintiff submitted a written closing statement of six pages on May 30, 2017, *see* Dkt. 32 ex. A.  On June 9, 2017, the IHO issued an order finding that Defendant had misclassified E.D. as intellectually disabled and had failed to properly evaluate her for seven years.  *See* Dkt. 23 ex. C at 4-6.  The IHO therefore ordered Defendant to reimburse Plaintiff A.D. for the cost of a speech-language evaluation; weekly speech-language therapy for three years; a functional vocational evaluation; $395 in fees and costs related to Huntington; monthly transitional services; and weekly life-skills training.  *Id.* at 7-13.  The IHO also ordered Defendant to provide E.D., then twenty-one, with three more years of classroom schooling and related transportation.  *Id.* at 13.  Defendant did not appeal the IHO's order.  Plaintiff filed this lawsuit for attorneys' fees, costs, and expenses on April 17, 2018.  *See* Dkt. 1 (Compl.).

## DISCUSSION

The IDEA grants district courts the discretion to award reasonable attorneys' fees and costs to a "prevailing party."  20 U.S.C. § 1415(i)(3)(B)(i).  A plaintiff "'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *K.L. v.*

*Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 17-18 (2d Cir. 2014) (alterations and internal quotation marks omitted) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12, 114 (1992)).

"To determine the attorneys' fees to which a prevailing party is entitled, a court must calculate each attorney's 'presumptively reasonable fee,' sometimes referred to as the 'lodestar,'" which is "calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended on the matter at issue." *E.F. ex rel. N.R. v. N.Y.C. Dep't of Educ.*, No. 11-CV-5243, 2014 WL 1092847, at *2 (S.D.N.Y. Mar. 17, 2014) (citing *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 189-90 (2d Cir. 2008)). When determining a reasonable hourly rate for an attorney or paralegal, courts consider both the prevailing market rates for such legal services as well as the case-specific factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[1] *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 426-29 (S.D.N.Y. 2012) (citations omitted). A court does not need to make specific findings as to each factor as long as it considers all of them when setting the fee award. *E.F.*, 2014 WL 1092847, at *3 (citations omitted).

The parties do not dispute that Plaintiff is a "prevailing party" entitled to recover reasonable fees, costs, and expenses under 20 U.S.C. § 1415(i)(3)(B)(i)(I). *See* Dkt. 8 (Answer) ¶ 2. Accordingly, the Court turns directly to calculating the presumptively reasonable fee for Plaintiff's counsel.

---

[1] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id*. at 428 (citation omitted).

## I. Hourly Rates

Plaintiff contends that her lead counsel, Ms. DeCrescenzo, is entitled to an hourly rate of $400; that both of Ms. DeCrescenzo's associates, Benjamin O. Brown, Esq., and Grace Duffin, Esq., are entitled to an hourly rate of $300; that Ms. DeCrescenzo's paralegal, Charlene Lolis, is entitled to an hourly rate of $140; and that an attorney affiliated with Ms. DeCrescenzo who briefed this fee motion, Benjamin J. Hinerfeld, Esq., is entitled to an hourly rate of $400. The Court concludes that Ms. DeCrescenzo, Mr. Brown, Ms. Duffin, Ms. Lolis, and Mr. Hinerfeld are entitled to hourly rates of $350, $200, $150, $100, and $350, respectively.

### A. Ms. DeCrescenzo's Hourly Rate

A year ago, the undersigned found that Ms. DeCrescenzo was entitled to an hourly rate of $350 in an IDEA fee-shifting case similar to this one. *See B.B. v. N.Y.C. Dep't of Educ.*, No. 17-CV-4255, 2018 WL 1229732, at *2 (S.D.N.Y. Mar. 8, 2018). The Court justified that rate largely on its observation that other judges of this district had awarded rates between $300 and $350 to attorneys litigating IDEA cases who have experience similar to Ms. DeCrescenzo's. *Id.* Having compared the proceedings in this case to those in *B.B.*, and having considered the *Johnson* factors, the Court sees no reason to deviate from its earlier conclusion and therefore finds that Ms. DeCrescenzo's reasonable hourly rate in this case is $350, a rate well in-line with recent decisions of this Court. *See, e.g.*, *M.D. v. N.Y.C. Dep't of Educ.*, No. 17-CV-2417, 2018 WL 4386086, at *3 (S.D.N.Y. Sept. 14, 2018) (reviewing recent S.D.N.Y. fee awards in IDEA cases along with case-specific factors and finding reasonable "hourly rates of $360 for senior attorneys, $280 for mid-level associates, $200 for junior associates, and . . . $120 for paralegals").

Plaintiff's efforts to distinguish this case from *B.B.* are unpersuasive. The transcripts of the due-process hearing in this case reveal that the hearing (which took less than four hours altogether) was broken up into five appearances over roughly six months largely because Ms. DeCrescenzo was unprepared to present Plaintiff's witnesses in two or three sessions—hardly the picture of hard-fought trench warfare that Plaintiff paints in her briefs. *See, e.g.*, Dkt. 42 (Reply in Supp. of Fee Mot.) at 3 ("[Defendant] forced Plaintiffs to litigate for six months to obtain relief, conceding only a compensatory education award and none of the other required elements of relief.").[2] Moreover, Plaintiff's case was, like the one in *B.B.*, uncontested; it was not an "unusually difficult and complex" one warranting an hourly rate on "the higher end of the spectrum," *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12-CV-6313, 2013 WL 4766339, at *7 (S.D.N.Y. Sept. 5, 2013) (internal quotation marks omitted); *see also* Dkt. 22 (Mem. in Supp. of Fee Mot.) at 13 ("[T]he hearing dates themselves did not all involve contested testimony . . . .").[3]

The Court is equally unpersuaded, however, by Defendant's contention that the *Johnson* factors require reducing Ms. DeCrescenzo's hourly rate to $325. *See* Dkt. 31 (Mem. in Opp. to Fee Mot.) at 10-12. The Court agrees with Defendant's contention that "[t]his case was uncomplicated," *id.* at 10, but so were the underlying proceedings in *B.B.*, in which the undersigned awarded Ms. DeCrescenzo a rate of $350, *see* 2018 WL 1229732, at *2 (noting that

---

[2]    In this regard, the record betrays Plaintiff's assertion that Ms. DeCrescenzo achieved a "swift" victory for Plaintiff, *see* Dkt. 22 (Mem. in Supp. of Fee Mot.) at 11, as well as the opinion of Gary S. Mayerson, Esq., that Ms. DeCrescenzo "litigated this matter with laudable efficiency," Dkt. 26 (Mayerson decl.) ¶ 24.

[3]    Contrary to Plaintiff's contention, *see* Dkt. 22 (Mem. in Supp. of Fee Mot.) at 11 & n.8; Dkt. 42 (Reply in Supp. of Fee Mot.) at 1-2, the Magistrate Judge's report and recommendation in *P.R. v. New York City Department of Education*, No. 17-CV-4887, 2018 WL 4328012, at *8-11 (S.D.N.Y. July 19, 2018), *adopted by* 2018 WL 4301366 (S.D.N.Y. Sept. 10, 2018), is inapposite. In *P.R.*, the Magistrate Judge recommended that Ms. DeCrescenzo be awarded an hourly rate of $400 in a case that required her to file two DPCs, required the IHO to issue two interim orders, and involved twelve hearings over ten months. *P.R.*, 2018 WL 4328012, at *10. Even if the underlying IDEA litigation in *P.R.*, like the underlying IDEA litigation here, lacked "any novel or difficult questions of law," *id.*, it also required substantially more work from Ms. DeCrescenzo and company—a fact that cuts against awarding a rate as high as $400 in this case.

underlying litigation "involved relatively minimal effort" and "a brief, uncontested hearing").

That Plaintiff retained Ms. DeCrescenzo on a contingency basis does not (in this case, anyway) militate in favor of reducing her hourly rate below $350, as Defendant contends. *See* Dkt. 31 (Mem. in Opp. to Fee Mot.) at 11. Although the existence of a contingency-fee arrangement minimizes the probative value of the hourly rates an attorney may publicly advertise, include in a retainer agreement, or charge other clients, *see, e.g.*, *K.F. v. N.Y.C. Dep't of Educ.*, No. 10-CV-5456, 2011 WL 3586142, at *4 (S.D.N.Y. Aug. 10, 2011) ("[A] client agreed-upon rate of $450 (as the product of an arms-length negotiation) takes on less significance when the client knows it will never pay that amount."), an attorney's "willingness to take the case on a contingency fee basis" may also be "a factor weighing in [that attorney's] favor," *id.* Here, neither party offers any reason why Ms. DeCrescenzo's contingency-fee arrangement with Plaintiff cuts in its favor, let alone why that arrangement requires deviating from the $350 hourly rate this Court assigned Ms. DeCrescenzo a year ago in *B.B.* Finally, the Court rejects Defendant's suggestion that Ms. DeCrescenzo's hourly rate should be reduced because DOE was represented during the underlying IDEA proceedings by a non-legal professional. *See* Dkt. 31 (Mem. in Opp. to Fee Mot.) at 12. To the extent it is, as Defendant suggests, easier to litigate against a party lacking trained legal counsel—a broad proposition which the Court doubts is universally true— Defendant offers no reason to believe that the absence of trained counsel for Defendant made proceedings in *this* case any easier. What made this case particularly easy was that Defendant made it abundantly clear from the first hearing session that although it would not voluntarily commit to provide aspects of the relief Plaintiff sought, it did not intend to contest Plaintiff's case. Whether that pronouncement came from a highly trained attorney or a layperson is

irrelevant.  And, in any event, the Court is wary of endorsing the view that a plaintiff's attorney's hourly rate should hinge so significantly on the fortuity of her adversary's credentials.[4]

Therefore, the Court reduces Ms. DeCrescenzo's hourly rate from $400 to $350.

B.  Mr. Brown's Hourly Rate

In *B.B.*, the Magistrate Judge recommended that Mr. Brown's claimed hourly rate of $300 be reduced to $200 "due to his relative lack of relevant experience," *B.B.*, No. 17-CV-4255, 2018 WL 3300700, at *3 (S.D.N.Y. Jan. 29, 2018) (report & recommendation), a recommendation to which neither Ms. DeCrescenzo nor Mr. Brown objected and which the undersigned adopted, *see* 2018 WL 1229732, at *1-3.  Having considered the circumstances of the underlying IDEA litigation and the *Johnson* factors, and because Plaintiff offers no reason to deviate from this Court's finding in *B.B.* regarding an appropriate hourly rate for Mr. Brown— indeed, Plaintiff does not comment on *B.B.* in relation to Mr. Brown at all—the Court finds that an hourly rate of $200 is appropriate for Mr. Brown.  This figure is consistent with the hourly rates other judges in this district have found to be appropriate for associates with experience comparable to Mr. Brown's.  *See, e.g.*, *M.D.*, 2018 WL 4386086, at *3 (awarding $200 per hour to junior associates relatively inexperienced in IDEA litigation).

---

[4]       Defendant contends that the declarations Plaintiff has submitted from New York City-area attorneys practicing special-education law "have little to no probative value with respect to 'prevailing' market rates." Dkt. 31 (Mem. in Opp. to Fee Mot.) at 14-16 (capitalization altered).  The Court need not address this broad proposition to dispose of this fee motion.  The plaintiff in *B.B.* submitted declarations from Jeffrey Marcus, Esq., and Irina Roller, Esq., that are substantially similar to those Plaintiff has submitted from those same attorneys in this case.  *Compare* Dkt. 25 (Marcus decl.), and Dkt. 27 (Roller decl.), *with* Dkt. 17 ex. I (Marcus decl.), *B.B.*, No. 17-CV-4255 (S.D.N.Y. Nov. 1, 2017), *and* Dkt. 17 ex. H (Roller decl.), *B.B.*, No. 17-CV-4255 (S.D.N.Y. Nov. 1, 2017).  After considering those declarations in *B.B.*, the Court assigned Ms. DeCrescenzo a $350 hourly rate.  *See B.B.*, 2018 WL 1229732, at *2.  Nothing in the versions of those declarations now before the Court, or in the declarations of Gary S. Mayerson, Esq., *see* Dkts. 26, 39, or Lisa Isaacs, Esq., Dkt. 35, persuades the Court that a different rate is appropriate here.

## C. Ms. Duffin's Hourly Rate

Although it is Plaintiff's burden to establish the appropriate hourly rate for a particular lawyer, *see L.V. v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 513 (S.D.N.Y. 2010), Plaintiff's briefing does not address the value of Ms. Duffin's time at all, let alone offer affidavits, other decisions, or other materials bearing on the appropriate hourly rate for her work. On the one hand, when Ms. Duffin logged her first hours on this case in late August 2016, *see* Dkt. 23 ex. A (itemized fees for services rendered through June 26, 2018 (hereafter, "Pre-6/26/18 Hours Log")) at 3, she appears to have had only slightly less experience in IDEA litigation—about three months—than Mr. Brown had in IDEA litigation, about six months, when he logged his first hours on this case in January 2018, *see id.* at 5; *see also* Dkt. 23 ex. H (Duffin résumé) (reflecting no IDEA practice except for Gina DeCrescenzo P.C. starting June 2016); *id.* ex. F (Brown résumé) (reflecting no IDEA practice except for Gina DeCrescenzo P.C. starting June 2017). But unlike Mr. Brown, who had about five years' total practice experience when he began working on Plaintiff's case, Ms. Duffin had only about seven months' total practice experience when she began working on Plaintiff's case.[5] Considering that Ms. Duffin was a novice lawyer when she participated in the underlying IDEA litigation, and applying the *Johnson* factors to her contribution to Plaintiff's case, the Court finds that an hourly rate of $150 is appropriate for Ms. Duffin.

---

[5]    *Compare* New York State Unified Court System, Attorney Detail: Benjamin Oberon Brown (Mar. 20, 2019, 5:10 PM), https://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=HQuBnL%2F%2FGUDr4uPy HAryUw%3D%3D (indicating that Mr. Brown was admitted to practice on February 27, 2013), *with* Grace Marie Duffin (Mar. 20, 2019, 5:11 PM), https://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=PQTwIoKS_ PLUS_kSohmGr%2F88uvA%3D%3D (indicating that Ms. Duffin was admitted to practice on January 21, 2016); *see also* Dkt. 23 ex. H (Duffin résumé) (reflecting only five months' post-admission experience before beginning work for Gina DeCrescenzo P.C. in June 2016), ex. F (Brown résumé) (reflecting nearly continuous litigation practice from February 2013 onward). The Court takes judicial notice of the date of each attorney's bar admission(s). Fed. R. Evid. 201(b)(2).

D. Ms. Lolis's Hourly Rate

Plaintiff offers no evidence that Ms. Lolis has "anything beyond entry-level qualifications" as a paralegal, *M.D.*, 2018 WL 4386086, at *3 n.3: although Ms. Lolis's declaration describes forty years of "administrative experience in professional settings," Dkt. 29 ¶ 4, her résumé reflects that her sole paralegal experience has been her employment as an "Executive Assistant/Paralegal" for Ms. DeCrescenzo since 2015, *see* Dkt. 23 ex. I. She also appears to have no formal paralegal training, licenses, degrees, or certifications. *See id.* Therefore, and in consideration of the *Johnson* factors (to the extent they apply to a paralegal), the Court finds "an hourly rate of $100, which is at the bottom end of the range for paralegals in this District," *M.D.*, 2018 WL 4386086, at *3 n.3, is appropriate for Ms. Lolis, not the $140 hourly rate Plaintiff requests.[6]

E. Mr. Hinerfeld's Hourly Rate

The Court finds that an hourly rate of $350 is appropriate for Mr. Hinerfeld. Mr. Hinerfeld's litigation career began in earnest in November 2003, *see* Dkt. 42 ex. Q (Hinerfeld résumé) at 2, giving him a little under fifteen years' litigation experience when he logged his first hours in this case in August 2018, *see* Dkt. 42 ex. R (itemized fees for services rendered June 30, 2018 and later (hereafter, "Post-6/30/18 Hours Log)) at 1, almost double Ms. DeCrescenzo's litigation experience when she started work on this case, *see* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 2; New York State Unified Court System, Attorney Detail: Gina Marie DeCrescenzo (Mar. 20, 5:20 PM), https://iapps.courts.state.ny.us/attorney/AttorneyDetails

---

[6]     The Court rejects Defendant's suggestion that the Court should not award any fee for Ms. Lolis's time. *See* Dkt. 31 (Mem. in Opp. to Fee Mot.) at 14 ("Further, courts generally hold that clerical and secretarial services are part of overhead and are not generally charged to clients." (alteration omitted) (quoting *G.B.*, 894 F. Supp. 2d at 439)). While certain administrative tasks may be treated as nonreimbursable overhead, it is appropriate in principle for a Plaintiff to seek, and for a court to award, reasonable compensation for reasonably necessary, case-related tasks performed by a paralegal. *See, e.g.*, *M.D.*, 2018 WL 4386086, at *3 (assigning reasonable hourly rate for work performed by paralegals).

?attorneyId=a43WWdHJcpse_PLUS_UIv2EaIXg%3D%3D (indicating that Ms. DeCrescenzo was admitted to practice on March 26, 2008). On the other hand, Mr. Hinerfeld had a little less experience with IDEA litigation when he began working on Plaintiff's case than Ms. DeCrescenzo did when she began her work. *Compare* Dkt. 42 ex. Q (Hinerfeld résumé), *with* Dkt. 23 ex. E (DeCrescenzo résumé). Considering prevailing market rates, Mr. Hinerfeld's résumé, the relative simplicity of the briefing on Plaintiff's fee motion, the lack of any novel or difficult questions of fact or law in this case, all the materials Plaintiff has submitted, and the *Johnson* factors, an hourly rate of $350 is reasonable for Mr. Hinerfeld's work on this case. *See G.B.*, 894 F. Supp. 2d at 428 (allowing courts to consider, among other things, "the novelty and difficulty of the questions" presented by the litigation and "the level of skill required to perform the legal service properly").

## II. Hours Billed

The Court reduces the 135.1 hours Plaintiff requests to a more reasonable 70.2 hours.

### A. Time Billed for Attending the Due-Process Hearing

The Court rejects Plaintiff's request that Ms. DeCrescenzo be awarded 22.5 hours for attending the five sessions of the due-process hearing. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 1-2. A review of the transcripts of those sessions, *see* Dkt. 23 ex. D at 12, 28, 30, 34, 36, 65, 67, 124, 126, 205, reveals that they lasted no more than 3.9 hours altogether, 18.6 fewer hours than the 22.5 hours Plaintiff has billed. Because Plaintiff offers no persuasive explanation why Ms. DeCrescenzo should be paid at her full rate for 22.5 hours purportedly spent attending proceedings that lasted only 3.9 hours, the Court reduces the 22.5 hours Plaintiff requests to 4.4—3.9 hours for the hearings themselves, with an additional 0.5 hours for time reasonably spent setting up witnesses and exhibits at in-person sessions and speaking with DOE

representatives or the IHO off the record. Furthermore, because Ms. DeCrescenzo failed to prepare any witnesses for the third session on March 7, 2017, and only begrudgingly examined Plaintiff that day because the IHO demanded it, the Court further reduces the hours it awards for that session from 0.9, the session's total length, to 0.4, the approximate amount of time Plaintiff testified. Thus, the Court awards 3.9 hours total for Ms. DeCrescenzo's hearing attendance.

Plaintiff contends that the 22.5 hours she requests for Ms. DeCrescenzo's hearing attendance include (1) "lengthy, two-hour round trips between White Plains, New York and downtown Brooklyn" for each in-person session; (2) "pre-hearing preparation"; (3) "meetings with clients"; and (3) "pre and post-hearing off-the-record conversation with the IHO and the DOE representative." Dkt. 42 (Reply in Supp. of Fee Mot.) at 8-9. As to the last of these activities, the Court has already granted Plaintiff half an hour for off-the-record, pre- and post-hearing discussions among Ms. DeCrescenzo, the DOE representative, and the IHO. As to pre-hearing preparation and client meetings, Plaintiff's fee request separately includes many entries for such activities, and Plaintiff does not explain why additional attorney hours spent on such tasks were included in entries for hearing attendance rather than separately itemized. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 1-2 (including, for example, entries for 3.4 hours spent "[p]rep[aring] direct exam D. Nemeth" and "direct exam Dr. Newman" and 1.1 hours spent on a "[t]elephone call w client re tomorrow's scheduled hearing date; neuropsych; how to proceed"). "Hearing attendance" is not a fee-shifting grab bag. Finally, it is well-established in this district that travel time is compensated at 50% of an attorney's hourly rate. *See, e.g.*, *M.D.*, 2018 WL 4386086, at *3. Thus, in addition to the 3.9 hours at Ms. DeCrescenzo's full rate that the Court has already awarded for Ms. DeCrescenzo's hearing attendance, the Court awards Plaintiff six hours at $175 per hour (half of Ms. DeCrescenzo's assigned hourly rate) for Ms. DeCrescenzo's

travel time—two hours for each of the first three hearing sessions at which Ms. DeCrescenzo appeared in person. (The Court awards no travel time for the fourth session, which could easily have been combined with the third had Ms. DeCrescenzo arranged with the IHO for a date at which both witnesses were available to testify.)[7]

B. Time Billed for Hearing Preparation

The Court reduces the 16.2 hours Plaintiff requests for Ms. DeCrescenzo's hearing preparation to six hours:

| Date | Description | Hours Logged | Citation |
|---|---|---|---|
| 9/14/16 | "Receipt and review of HLC testing; draft notes for direct." | 2.5 | Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 2. |
| 11/17/16 | "Pre-litigation work: Create trial binder, review evidence, create notes for hearing." | 2.2 | *Id.* |
| 3/6/17 | "Pre-litigation work: Prepare for tomorrow's hearing." | 2.5 | *Id.* at 1. |
| 3/20/17 | "Pre-litigation work: Prepare for upcoming hearing." | 2.5 | *Id.* |
| 3/20/17 | "Receipt and review of Dr. Newman's eval (1.5); notes in preparation for direct exam (1.2)." | 2.7 | *Id.* |
| 3/21/17 | "Telephone call w Dr. Newman" | 0.4 | *Id.* |
| 3/22/17 | "Pre-litigation work: Prepare direct exam D. Nemeth (1.5); Prepare direct exam Dr. Newman (1.9)" | 3.4 | *Id.* |
| | **Total:** | **16.2** | |

Bearing in mind that the due-process hearing lasted only 3.9 hours altogether; that Plaintiff introduced only six exhibits (to which Defendant did not object); that Plaintiff did not deliver an opening statement and submitted her closing statement in writing; and that the only testimony consisted of approximately twenty minutes of testimony by Plaintiff herself, approximately twenty minutes of testimony by Nemeth, and approximately eighty minutes of

---

[7]     To the extent Plaintiff suggests that the session-start and -end times reflected in the hearing transcripts are not to be trusted, *see* Dkt. 42 (Reply in Supp. of Fee Mot.) at 8, the Court rejects that argument because it is unsupported by any evidence.

testimony by Dr. Newman,[8] the Court finds that the 16.2 hours Plaintiff requests for hearing preparation are grossly excessive. An award of six hours—which still provides a generous one and a half-to-one preparation-to-proceedings ratio—is more than reasonable given the uncontested, non-complex nature of the hearing.

This award is also generous given the circumstantial evidence that the hours Ms. DeCrescenzo reported for these activities are not entirely accurate. For example, Ms. DeCrescenzo reported that she spent 2.5 hours on March 6, 2017, preparing for the hearing session on March 7, 2017. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 1. At the March 7 session, however, she had no witness prepared to testify, *see* Dkt. 23 ex. D (hr'g tr.) at 41-50, leading the Court to wonder what she spent 2.5 hours doing. Similarly, Ms. DeCrescenzo's billing records reflect that she spent 1.5 hours on March 22, 2017 preparing the direct examination of Nemeth. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 1. Nevertheless, before calling Nemeth during the hearing on March 23, Ms. DeCrescenzo could answer virtually no questions from the IHO about what Nemeth would say. *See* Dkt. 23 ex. D (hr'g tr.) at 90-95.

### C. Time Billed for Ms. DeCrescenzo's Meetings with Plaintiff

The Court appreciates that an attorney reasonably must meet and confer with his or her client throughout a litigation, but Plaintiff has inadequately justified her request that Defendant pay for 8.1 hours of meetings between her and Ms. DeCrescenzo:

---

[8]     *See* Dkt. 23 ex. D (hr'g tr.) at 53-65 (Plaintiff test.), 105-22 (Nemeth test.), 130-201 (Newman test.). Although Defendant's briefing offers approximations of the total time each witness spent on the stand, *see* Dkt. 31 (Mem. in Opp. to Fee Mot.) at 17-18, neither party offers any affidavits or other evidence reflecting precisely how long each witness testified. Lacking anything else to go on, the Court estimates the length of each witness's testimony based on the number of transcript pages devoted to his or her testimony. This is a rough metric, to be sure, but it produces results within tolerable limits.

| Date | Description | Hours Logged | Citation |
|---|---|---|---|
| 9/6/16 | "Telephone call w client" | 1.2 | Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 2. |
| 10/13/16 | "Telephone call w client re 'wish list.'" | 1.0 | *Id.* |
| 10/26/16 | "Telephone call w client." | 1.0 | *Id.* |
| 11/23/16 | "Meeting w client after hearing." | 1.2 | *Id.* |
| 12/20/16 | "Telephone call w client re tomorrow's scheduled hearing date; neuropsych; how to proceed." | 1.1 | *Id.* |
| 12/21/16 | "Telephone call w client re neuro approved at 4500." | 0.4 | *Id.* |
| 1/18/17 | "Telephone call w client re update." | 0.2 | *Id.* at 1. |
| 3/16/17 | "Telephone call w client re NY Therapy and vocational services; how to proceed." | 1.0 | *Id.* |
| 3/16/17 | "Telephone call w client re NY Therapy and vocational services; how to proceed." | 0.2 | *Id.* |
| 3/17/17 | "Telephone call w client re NY Therapy." | 0.4 | *Id.* |
| 3/23/17 | "Telephone call w client re next steps." | 0.4 | *Id.* |
| **Total:** | | **8.1** | |

Some of these entries appear to be inadvertently duplicative or for redundant attorney–client conversations. *See, e.g.*, *id.* at 1 (reflecting a one-hour call "re NY Therapy and vocational services; how to" on 3/16/2017; a 0.2-hour call " re NY Therapy and vocational services; how to proceed" on the same date; and a 0.4-hour call "re NY Therapy" on 3/17/2017). Others appear to be the product of wasteful time-allocation and billing practices. *See, e.g.*, *id.* at 2 (reflecting a 1.1-hour call on December 20, 2017 "re tomorrow's scheduled hearing date; neuropsych; how to proceed" when no hearing session was scheduled to take place until January 2017 at the earliest); *id.* (reflecting a 1.2-hour meeting on November 23, 2016, following a hearing that day that Plaintiff had personally attended). In light of these redundancies and excesses, but in recognition of the fact that some collaboration with Plaintiff was necessary at key moments of the IDEA litigation (especially during the drafting of the DPC), the Court reduces the hours Plaintiff requests for time spent in consultation with Ms. DeCrescenzo from 8.1 to four.

### D. Time Billed for Drafting the Post-Hearing Closing Statement

The Court rejects Plaintiff's request that Ms. DeCrescenzo be awarded 7.5 hours for time spent drafting Plaintiff's written closing statement to the IHO. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 1 (including entry for four hours spent "begin[ning] to draft closing brief" on May 9, 2017 and entry for 3.5 hours spent "[r]ead[ing] all transcripts (2.5)" and "[e]dit[ing]/revis[ing] closing brief (1)"). Because Ms. DeCrescenzo was present at each hearing, the Court will not order Defendant to compensate her for the 2.5 hours she asserts she spent reading the transcripts of those hearings.[9] And because Plaintiff's six-page closing statement primarily regurgitated the testimony of the three witnesses, used a boilerplate statement of the law governing a FAPE, and included little legal argument, *see* Dkt. 32 ex. 1, the Court will award Plaintiff three hours—still a generous amount of time—for Ms. DeCrescenzo's preparation of the closing statement.

### E. Time Billed for Work by Ms. Duffin

Defendant contends that all 2.2 hours Plaintiff requests for Ms. Duffin's work, *see* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 2-3, should be eliminated because "such hours billed by Ms. Duffin did not result in any meaningful contribution" to Plaintiff's administrative success, *see* Dkt. 31 (Mem. in Opp. to Fee Mot.) at 20. The Court agrees in large part. Ms. Duffin's time entry of 1.2 hours spent "[l]ook[ing] for and compil[ing] evidence," *see* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 3, is far too vague to warrant an award, *see, e.g.*, *M.D.*, 2018 WL 4386086, at *4 ("The court . . . may reduce the number of compensable hours for vagueness, inconsistencies, and other deficiencies in the billing records . . . ." (internal quotation marks omitted)). And the eighteen minutes she spent beginning to draft Plaintiff's DPC, *see* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 3, are redundant of the five hours Ms. DeCrescenzo spent editing

---

[9] Having read the transcripts, the Court finds that 2.5 hours is substantially longer than it should have taken an experienced attorney who participated in the hearings to review the transcripts.

and revising the DPC, *see id.* at 2 (reflecting entries for five hours Ms. DeCrescenzo spent editing and revising complaint on September 2 and 6, 2016). Ms. Duffin's other entries appear appropriate. The Court will therefore award Plaintiff 0.7 hours for Ms. Duffin's work.

### F. Time Billed for Work by Ms. Lolis

The Court reduces the grossly excessive 4.5 hours Ms. Lolis spent "[s]ubmit[ting] billing to the DOE" on June 12, 2017 to a more reasonable (but still generous) two hours. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 3. The Court also reduces the one hour Ms. Lolis spent mailing, emailing, and faxing Plaintiff's DPC, *see id.*, to 0.2 hours. Finally, the Court reduces the 1.6 hours Ms. Lolis spent updating and revising timekeeping records on April 11, 16, and 18, 2018, to half an hour. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 5-6. Given the relatively small number of timekeeping entries Ms. DeCrescenzo and Mr. Brown produced between June 12, 2017—the date of the last timekeeping log Ms. Lolis had prepared, *see id.* at 3—and April 18, 2018, Ms. Lolis should not have needed 1.6 hours to "update" or "revise" the log. She could have easily accomplished that task in half an hour. In short, the Court reduces Ms. Lolis's time to 5.1 hours total.

### G. Time Billed for Drafting the Federal Complaint

The Court reduces the 5.4 hours Plaintiff requests to compensate Mr. Brown for time spent preparing Plaintiff's Complaint in this Court to 1.5 hours. *See* Dkt. 1; *see also* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 4-5 (reflecting 5.4 hours spent reviewing hearing transcripts, drafting, and revising federal fee-shifting complaint on 3/29/2018, 4/3/2018, 4/4/2018, and 4/5/2018). The nine-page Complaint consists largely of boilerplate, mainly regurgitated (if not copied and pasted) information contained in Plaintiff's DPC and the IHO's decision, and required little original or novel legal analysis to prepare.

### H. Time Billed for Drafting and Reviewing Affidavits

The Court will not award Plaintiff fees for 1.8 hours Mr. Brown spent preparing affidavits of individuals whose names have been redacted from Mr. Brown's hours log.  *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 4-5 (reflecting 1.8 hours spent drafting affidavits of unknown persons and emailing with those persons on 4/6/18, 4/9/18, 4/13/18, and 6/1/18). These entries are far too vague for the Court to assess whether they reflect reasonably necessary work, and Plaintiff offers no explanation for them in her briefing.  *See M.D.*, 2018 WL 4386086, at *4.

Regarding time spent preparing affidavits for persons actually identified in the billing records, the Court rejects Defendant's contention that any time billed for this work must be eliminated because "it was inappropriate for Plaintiffs' counsel to prepare" declarations signed by fellow New York City-area IDEA litigators to be used as "evidence of [counsel's] reasonable hourly rates." Dkt. 43 (Surreply in Opp. to Fee Mot.) at 7.  Defendant offers no authority for, and the Court sees no reason to endorse, the broad notion that these declarations cannot be credited as a matter of law—even though, the Court notes, the fact that a plaintiff's attorney drafted a declaration for a fellow IDEA litigator's signature *may* reduce the weight to be given that declaration when offered in support of a fee motion.  Nor is the Court persuaded that it was inappropriately inefficient for Plaintiff's counsel to prepare declarations of this type themselves, as Defendant contends.  *See id.*

The Court does, however, reduce the 2.9 hours Plaintiff requests to compensate Mr. Brown for time spent preparing these declarations:

| Date | Description | Hours Logged | Citation |
|---|---|---|---|
| 8/1/18 | "Modify proposed aff. of Mr. Sahni to be a declaration pursuant to 28 U.S.C. §1746 as requested by Mr. Shani [*sic*]; send to Mr. Sahni for signature." | 0.1 | Dkt. 42 ex. R (Post-6/30/18 Hours Log) at 2. |
| 8/1/18 | "Email exch w/ Jasbrinder Sahni re: Mr. Sahni's plans to return declaration." | 0.1 | *Id.* |
| 8/21/18 | "Draft proposed decl. of H. Jeffrey Marcus, Esq." | 0.4 | *Id.* |
| 8/21/18 | "Email to H. Jeffrey Marcus, Esq. with request for addt'l information concerning his firm's hourly rates and retainer agreements with his clients." | 0.3 | *Id.* |
| 8/27/18 | "Edit, revise & proofread proposed declaration of Gary S. Mayerson; email to Gary S. Mayerson w/ cover note." | 0.7 | *Id.* |
| 8/27/18 | "Edit/revise proposed declaration of H. Jeffrey Marcus; email to H. Jeffrey Marcus w/ record of edits made." | 0.4 | *Id.* |
| 8/28/18 | "Telephone call w/ H. Jeffrey Marcus, Esq. / Particulars of the underlying admin. proceeding and of his Declaration." | 0.1 | *Id.* |
| 8/29/18 | "Email correspondence w/ Irina Roller re: Declaration." | 0.2 | *Id.* |
| 8/29/18 | "Edit/revise decl. of Irina Roller at req. of Irina Roller" | 0.1 | *Id.* |
| 8/31/18 | "Tel call  w/ office of Gary Mayerson re: final edits to Mr. Mayerson's declaration." | 0.1 | *Id.* |
| 10/12/18 | "Email to Gary Mayerson" | 0.2 | *Id.* |
| 10/12/18 | "Edit/revise proposed decl. of Gary Mayerson w/ reference to p. 15 of DOE's opposition mem. of l." | 0.2 | *Id.* |
| | **Total:** | **2.9** | |

As noted, the Marcus and Roller declarations Plaintiff submitted in support of her fee motion are substantially identical to those the plaintiff submitted in *B.B.  See supra* n.4.  Given that the only work required to make these declarations suitable for filing in this case was to update the billing rates described therein, the Court deducts 1.1 hours from the time Plaintiff requests for Mr. Brown—one tenth of an hour from the time he spent preparing Roller's declaration, and one hour from the time he spent preparing Marcus's declaration.

I. Time Billed for Intra-Office Meetings

Plaintiff requests that Ms. DeCrescenzo be compensated for a meeting lasting half an hour at which she and Mr. Brown discussed "drafting settlement proposal to NYCDOE." Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 4. Plaintiff requests that Mr. Brown be compensated for half an hour spent at the same meeting. *Id.* at 5. Although meetings between attorneys are generally necessary from time to time to formulate litigation strategy, the Court finds the requested award of $275 (two half hours, one at Ms. DeCrescenzo's rate and another at Mr. Brown's) for a meeting devoted to the strategy behind drafting a one-and-a-half page, boilerplate demand letter, *see* Dkt. 23 ex. O, is excessive—especially when Mr. Brown spent an additional 0.7 hours actually writing the letter, *see* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 4-5 (reflecting April 5, 2018 entry for 0.4 hours spent "[d]raft[ing] letter conveying settlement offer" and April 18, 2018 entry for "[f]inaliz[ing] settlement letter and supporting docs; give to CL for mailing"). Therefore, in the interest of compensating counsel for time reasonably spent strategizing about settlement while avoiding an excessive fee award, the Court deducts 0.4 hours from each attorney's time.

The Court will not, however, eliminate the tenth of an hour both Ms. DeCrescenzo and Mr. Brown separately logged for a meeting regarding their strategy for litigating this case in this Court. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 4-5. Such strategy meetings can be integral to a litigation's success, and a meeting of at most six minutes is laudably short.

J. Time Billed for Paralegal Tasks Performed by Mssrs. Brown and Hinerfeld

Mr. Brown logged 2.4 hours, and Mr. Hinerfeld logged 1.8 hours,[10] for tasks that are secretarial or clerical in nature:

---

[10]     Mr. Hinerfeld logged a total of 2.4 hours on these tasks but applied a "discretionary reduction" of 25% to all of his hours "to account for arguably excessive time it has taken me to finish the instant briefing." Dkt. 40

| Date | Description | Hours Logged | Citation |
|---|---|---|---|
| 4/13/18 | Brown: "Prepare civil cover sheet" | 0.1 | Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 4. |
| 4/18/18 | Brown: "Redact fee detail for provision to NYCDOE's counsel." | 0.2 | *Id.* |
| 4/18/18 | Brown: "Assemble papers for service and e-mail to process server." | 0.3 | *Id.* |
| 4/26/18 | Brown: "File proof of service of summons and complaint via CM/ECF." | 0.1 | *Id.* |
| 4/26/18 | Brown: "Proofread process server's affidavit." | 0.1 | *Id.* |
| 7/2/18 | Brown: "Reviewed hearing transcript and drafted concise description of what occurred on each hearing date; for motion for attorneys' fees." | 1.0 | Dkt. 42 ex. R (Post-6/30/18 Hours Log) at 3. |
| 7/12/18 | Brown: "Prepare timesheets for submission to court." | 0.6 | *Id.* |
| 8/10/18 | Hinerfeld: "draft and file Notice of Appearance" | 0.1 | *Id.* at 1. |
| 8/23/18 | Hinerfeld: "draft and <u>file</u> letter for clarification of July 1 Order" (emphasis added) | 0.1 | *Id.* |
| 8/24/18 | Hinerfeld: "redact exhibits" | 0.3 | *Id.* |
| 8/26/18 | Hinerfeld: "compile exhibits" | 1.5 | *Id.* |
| 8/31/18 | Hinerfeld: "Finalize MOL, Motion, Declarations and <u>File</u>" (emphasis added) | 0.2 | *Id.* |
| 10/16/18 | Hinerfeld: "Finalize and <u>file</u> reply brief" (emphasis added) | 0.2[11] | *Id.* |
| | **Brown Total:** | **2.4** | |
| | **Hinerfeld Total (before self-imposed 25% reduction):** | **2.4** | |

Because these tasks would have been more efficiently handled by a paralegal or legal secretary, the Court orders Defendant to compensate Mr. Brown and Mr. Hinerfeld for 2.4 and 1.8 hours, respectively, at Ms. Lolis's rate of $100 per hour.

---

(Hinerfeld decl.) ¶ 23; *see also* Dkt. 42 ex. R (Post-6/30/18 Hours Log) at 1. The Court therefore treats these 2.4 hours as 1.8 hours for purposes of this motion.

[11]     Mr. Hinerfeld's hours log does not break out the amount of time he spent filing Plaintiff's motion and accompanying materials on August 31, 2018, but the Court assumes he spent no more than 0.2 hours on the task. Similarly, the Court assumes that Mr. Hinerfeld spent no more than 0.1 hours filing Plaintiff's August 23, 2018 letter with the Court and no more than 0.2 hours filing Plaintiff's reply brief on October 16, 2018.

### K.  Time Billed for Briefing This Fee Motion

The Court rejects Defendant's contention that all of Mr. Hinerfeld's timekeeping entries relating to the preparation of Plaintiff's briefing in this Court are insufficiently specific to merit a fee award.  *See* Dkt. 43 (Surreply in Opp. to Fee Mot.) at 7-9.  While entries like "[r]evise MOL ISO fees" are at the outer limit of acceptable specificity, *see* Dkt. 42 ex. R (Post-6/30/18 Hours Log) at 1, they are not so vague that the Court is unable to assess whether the task they describe—drafting Plaintiff's briefing in support of her fee motion—was reasonably necessary to prosecute this case.  Greater specificity of billing entries is, from this Court's perspective, desirable.  But the relative lack of it here does not justify eliminating all the hours Mr. Hinerfeld spent briefing this fee motion.

That does not mean, however, that the Court will *award* all the hours Plaintiff requests.  Applying his self-imposed 25% reduction and then rounding to the nearest tenth of an hour, Mr. Hinerfeld is requesting an award equal to thirty-five hours spent preparing Plaintiff's briefing in this Court.  *See* Dkt. 42 ex. R (Post-6/30/18 Hours Log) at 1 (reflecting entries for 46.6 hours spent researching, drafting, revising or consulting with co-counsel regarding Plaintiff's briefing on 8/22/18, 8/23/18, 8/24/18, 8/25/18, 8/26/18, 8/27/18, 8/28/18, 8/29/18, 8/30/18, 8/31/18, 10/3/18, 10/4/18, 10/6/18, 10/7/18, 10/9/18, 10/11/18, 10/15/18, and 10/16/18).[12]  This is grossly excessive.  After considering the length, complexity, and quality of the briefing, the Court will award Plaintiff fifteen hours for Mr. Hinerfeld's time spent briefing this fee motion.

*      *      *

---

[12]  The Court's calculation excludes 0.2 hours from the 5.5 hours Mr. Hinerfeld logged on August 31, 2018 for finalizing and filing Plaintiff's opening brief and 0.2 hours from the 2.5 hours he spent filing Plaintiff's reply on October 16, 2018.  Those 0.4 hours have already been awarded at a paralegal rate.  *See supra* Pt. II(J) & n.11.

Defendants contend that Mr. Hinerfeld logged only 34.7 hours preparing the briefing, or twenty-six hours with the 25% reduction.  *See* Dkt. 43 (Surreply in Opp. to Fee Mot.) at 7-8 & n.6.  The Court's calculations result in different figures.

Accounting for each of these hourly reductions, and applying the hourly rates assigned in Part I, the Court finds that the presumptively reasonable fee for Ms. DeCrescenzo and company is $19,525.

## III. Departure from the Presumptively Reasonable Fee

The parties do not request, and the Court sees no reason to apply, either an upward or downward multiple to the presumptively reasonable fee. *See G.B.*, 894 F. Supp. 2d at 429 n.12 (noting that "courts may downwardly adjust the presumptively reasonable fee based on a prevailing party's limited success" but that "upward adjustments may be made only in rare and exceptional circumstances" based on "specific evidence that the lodestar fee would not have been adequate to attract competent counsel" (internal quotation marks omitted)).

## IV. Plaintiff's Costs and Expenses

Defendant does not contest Plaintiff's request for $548.22 in costs and expenses. *See* Dkt. 23 ex. A (Pre-6/26/18 Hours Log) at 6; *see also* Dkt. 31 (Mem. in Opp. to Fee Mot.) at 1 n.1. Those costs and expenses appear reasonable to the Court, and therefore the Court awards those costs and expenses in full.

## CONCLUSION

For the foregoing reasons, Plaintiff is awarded a total of $20,073.22 in attorneys' fees, costs, and expenses. The Clerk of Court is respectfully directed to enter judgment in Plaintiff's favor for that amount, terminate all open motions, and close this case.

**SO ORDERED.**

Date: **March 21, 2019**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**